IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**UNITED STATES OF AMERICA**                                                            **PLAINTIFF**

**V.**                              **CASE NO. 5:14-CR-50055**

**MIKATO FULKS**                                                                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

On January 9, 2015, the parties appeared before the Court for a hearing on Defendant Mikato Fulk's Motion to Suppress (Doc. 14) and the Government's Response. (Doc. 15). After considering the testimony of the witnesses and the briefs and arguments presented by the parties, the Court **DENIED** the Motion as far as statements made to Detective Gene Johnson and Special Agent Brain Rorex, but **GRANTED** the Motion as to any statements made from the time Fulks was placed into the Springdale Police Department's vehicle and taken to his residence on Old Wire Road to conduct a search. To the extent this Order conflicts with statements or rulings issued from the bench, this Order will control.

## I. BACKGROUND

On July 21, 2014, while investigating a case involving the distribution of controlled substances, detectives from the fourth judicial task force of the Springdale narcotics unit and members of the Drug Enforcement Administration ("DEA") executed a search warrant at 1567 Dodd Avenue in Springdale, Arkansas. Officers kicked in the door of the residence upon entry and handcuffed the occupants, including Fulks. Fulks informed officers that he resided at a house nearby, located at 2437 Old Wire Road, and offered his consent to

search the home, where he admitted there were guns. Officers then went to Fulks' residence to conduct a search. Fulks was not provided with *Miranda* warnings prior to giving consent to search or making the statement about the guns.

In his Motion, Fulks asks the Court to suppress all statements attributed to him on the day of his arrest because officers failed to provide him with *Miranda* warnings prior to obtaining incriminating information from him. Fulks raises the following arguments: (1) he was in custody for purposes of *Miranda* and (2) officers asked him questions that were reasonably likely to elicit incriminating information.

The Government concedes that Fulks was in custody for purposes of *Miranda*, but argues that *Miranda* was not triggered because he volunteered the information concerning firearms at his residence without any interrogation by officers.

Neither the validity of the search warrant at Dodd Avenue, nor the validity of the consent to search Fulks' residence are challenged in this Motion to Suppress.

## II. FINDINGS OF FACT

### A. Detective Gene Johnson's Testimony

Detective Gene Johnson of the fourth judicial drug task force in Springdale, Arkansas, testified that he was conducting an ongoing investigation regarding the distribution of controlled substances by monitoring packages being sent to 1567 Dodd Avenue. On July 21, 2014, the postal service intercepted a package containing one pound of methamphetamine and 10 pounds of marijuana, upon which officers "obtained an anticipatory search warrant so that once the package was delivered to the residence, we served the search warrant."

On that same day, at approximately 12:50 p.m., officers broke down the door and made entry into the Dodd Avenue residence. Fulks was present in the home along with four other occupants. Detective Johnson testified that officers secured the occupants by placing them on the floor to handcuff them, and then separated them. He subsequently took Fulks outside of the home and asked Fulks where he resided. Fulks replied that he lived at 2437 Old Wire Road on a part-time basis with his wife and kids. Detective Johnson contended that he did not ask Fulks whether he had drugs or weapons, and further denied that he spoke to Fulks' wife or anyone else claiming that the guns belonged to them.

Detective Johnson testified that as he began to walk away from Fulks, Fulks stated that if officers were going to search his residence, they did not "need to kick in his door, that he would give his consent to search." Detective Johnson maintained that he did not ask to search Fulks' residence, but that this consent was given spontaneously. Detective Johnson stated that no *Miranda* warnings were given to Fulks, as officers did not yet have cause to arrest him, because at that point, Fulks was simply present in the house where drugs were located and a search warrant had been executed.

Prior to executing the Dodd Avenue warrant, Detective Johnson acknowledged that he was aware of Fulks' prior felony. However, he contended that the focal point of the investigation centered around the drug investigation at the Dodd Avenue address, in which Fulks was a participant. Detective Johnson maintained that he did not inform Fulks of his *Miranda* rights as he was not interrogating him, but only asked questions that pertained to where he resided. Subsequently, Detective Johnson advised a supervisor at the DEA that Fulks consented to a search of his residence, after which DEA Agent Brian Rorex obtained Fulks' written consent to search his residence at Old Wire Road.

After a search was conducted at Old Wire Road, a detective brought Detective Johnson a HiPoint 9mm pistol, which had been identified as Fulks' weapon. Detective Johnson took the firearm back to the police station, where it was subsequently sent to the Arkansas State Crime Lab.

### B. Special Agent Brian Rorex's Testimony

Special Agent Brian Rorex of the DEA testified that he was involved in the ongoing investigation of the Dodd Avenue residence through the DEA's offer of additional manpower and assistance in any seizure of money found at the residence. The search warrant had been executed at the Dodd Avenue residence when Agent Rorex arrived. Agent Rorex's supervisor, Tommy Flowers, asked him if he had any consent-to-search forms and informed him that Fulks had consented to a search of his residence. At this point, Agent Rorex maintained that because this was not his investigation, he was not aware of Fulks' criminal background, although he knew that he was associated with the distribution of methamphetamine and marijuana.

Agent Rorex testified that he made contact with Fulks, who remained outside of the Dodd Avenue residence, and presented the consent-to-search form to Fulks. Agent Rorex went through the form with Fulks word for word, reading the questions aloud and requesting that Fulks initial specific portions prior to signing the form. He asked Fulks his name and address. He specifically requested that Fulks initial the questions on the form which stated: (1) "I have not been threatened, nor forced in any way" and (2) "I freely consent to this search."

Agent Rorex testified that after Fulks signed the consent-to-search form, he spontaneously said "all that's in the house is two guns. One's my wife's and one's mine

that I got from the street." Agent Rorex stated "that kind of took me by surprise that he just told me that . . . . because I had not asked him any questions to that." *Id.*

After the consent-to-search form was signed, Agent Rorex contended that Fulks was placed in a Springdale Police Department vehicle and driven to Old Wire Road. Agent Rorex drove to the house in a separate vehicle. Agent Rorex testified that only one gun was found at the residence by Detective Rob Thorson; however, because Agent Rorex had no further contact with Fulks, he was unaware of how the gun was identified as belonging to Fulks. At no point did Agent Rorex read Fulks his *Miranda* rights.

### C. Transcript

During Agent Rorex's testimony, a transcript of a phone call was played, which took place between an unidentified female ("UF") and Fulks on July 22, 2014, the day after Fulks' arrest, which was excerpted as follows:

> **UF**: because they act like they don't know, they didn't have no warrants, they (indiscernible), they didn't have, they didn't go, they don't, he's like do you know what officer that you talked to? No, because I'm on the phone. Do you have a badge number (indiscernible) they didn't come in my house. I said, well, that's (indiscernible) my house and left, but. He's like, well you might need to make a police, well, I said for what would the police do with it.
>
> **Fulks**: Yeah.
>
> **UF**: So I (undiscernible) --
>
> **Fulks**: No, dude, he didn't ask me, I done admit to it , I just told him yes the gun in the house, man. And he was like, well, do your girlfriend know about

it?  I say yeah, I said she got a registered gun.  And that was it man.  They was just mad, they, they (indiscernible) in the morning, but they were trying to scam me then, tell me he wasn't going to get no bond, didn't give him a bond.

[Transcript pp. 10-11].

The Government also played the following excerpt at the hearing:

**Fulks**: Nah, I didn't ever say that, I just told him it was a gun in the house, man.  So he's lying, whoever that is.

[Transcript, p. 16].

### III. CONCLUSIONS OF LAW

**Whether incriminating statements were made in response to police interrogation**

Both Fulks and the Government acknowledge that Fulks was in handcuffs at the time he offered the incriminating information.  Therefore, he was in custody for purposes of *Miranda*, and the only question that remains is whether he was being interrogated.

At the hearing, Defense counsel argued that any statements made on July 21, 2014 should be suppressed because the length of the detention and the presence of numerous police officers in itself was reasonably likely to elicit incriminating information from Fulks.  Therefore, Fulks seeks to suppress any statements made by him stating that there were two guns in his home and that he acquired one on the streets, as well as any reference to him identifying the gun found in the house as his.  In response, the Government argues that both the idea of searching his residence and the statements regarding the two guns were spontaneous statements made by Fulks that were not prompted by officer

questioning. Further, the Government contended that in a phone call made after Fulks was incarcerated, he admits that he was not prompted by officer questioning, but "done admit to it," and that he voluntarily offered the information regarding ownership of the guns at the time he consented to a search of his home. However, defense counsel argued that the recorded transcript of the call is ambiguous, in that it is unclear as to what Fulks refers when he states "they didn't ask me."

Custodial statements made in response to police interrogations are inadmissible unless a suspect is informed of his *Miranda* rights. *See generally Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Because the Government concedes that Fulks was in custody, the only issue pertains to whether police interrogated Fulks in order to elicit incriminating responses. Either express questioning or its functional equivalent may constitute interrogation. *United States v. Cordova*, 990 F.2d 1035 (8th Cir. 1993). "A question is an interrogation if it is 'reasonably likely to elicit' incriminating information." *Cowan*, 674 F.3d at 958 (citing *Pennsylvania v. Muniz*, 496 U.S. 582, 600-01 (1990)). An interrogation does not include requests for routine information necessary for basic identification. *Id.* (internal citations omitted). However, the Eighth Circuit has found that this exception does not apply when the officer should "reasonably be aware that the information sought . . . is directly relevant to the substantive offense charged." *Id.* (internal citations omitted).

Voluntary statements that are not made in response to interrogation are admissible, with or without a *Miranda* warning. *See United States v. Binion*, 570 F.3d 1034, 1041 (8th Cir. 2009) (finding no *Miranda* violation where suspect was read his rights, refused to sign a waiver of rights, yet made incriminating remarks); *United States v. Aldaco*, 477 F.3d

1008, 1012 (8th Cir. 2007) (finding no violation where the suspect volunteered incriminating information after he was read his rights, but stated he wanted to speak with officers without his attorney present); *United States v. Tail*, 459 F.3d 854, 857 (8th Cir. 2006) (finding no violation where officer did not question suspect during the car ride, but only made minimal, polite conversation, and suspect volunteered incriminating information); *Cordova*, 990 F.2d at 1036-37 (finding no *Miranda* violation where wife told officers that she had drugs on her body although officers did not ask questions regarding her involvement).  By contrast, a *Miranda* violation was found in *Cowan* where the officer handcuffed the suspect during a drug raid at an apartment and asked questions that went beyond mere identification.  In that case, the officer's question regarding how the suspect arrived at the apartment did not require a *Miranda* warning.  However, when the suspect gave the officer an answer that was clearly untruthful, and the officer began questioning him, this exceeded routine identification inquiry and became an interrogation. *Cowan*, 674 F.3d at 958.  Further, voluntary statements made in a response to a request for a consent to search do not amount to an interrogation. *See United States v. Crisolis Gonzalez*, 742 F.3d 830, 834 (8th Cir. 2014), as corrected (Feb. 11, 2014) (affirming district court's finding that defendant's statement that he possessed a gun was admissible because the statement was made in response to a request for consent to search, which did not amount to an interrogation).

      The Government bears the burden of persuasion and must prove by preponderance of the evidence that the challenged statements were voluntary and not in violation of Fulks' *Miranda* rights. *See United States v. Aguilar*, 384 F.3d 520, 523 (8th Cir. 2004) (citing *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004)).  Courts weigh the

voluntariness of a confession based upon the totality of the circumstances. *Id.* In this case, both Detective Johnson and Agent Rorex have testified with respect to two specific events on the day in question. The Court finds that the facts have been established by a preponderance of the evidence that Detective Johnson's questioning did not go beyond mere identification, and the Court finds that the statement by Fulks that he would be willing to have his residence searched was a voluntary and spontaneous statement.

Agent Rorex presented Fulks with the consent-to-search form and went over the form word for word with Fulks. Agent Rorex testified that Fulks spontaneously informed him that there were two guns at the residence on Old Wire Road, one belonging to his wife and another one that Fulks had acquired off the street. There is no evidence indicating that the officers did anything to elicit or intimidate Fulks into saying anything regarding guns at his residence. Voluntary statements—even without a *Miranda* warning—are admissible. *See Binion*, 570 F.3d at 1041.

Based on Agent Rorex's testimony, which the Court finds to be credible, the Court opines that the Government met its burden by a preponderance of the evidence to establish that statements regarding the two guns at the Old Wire Road residence were voluntary and spontaneous and were not elicited by any improper questioning by Agent Rorex.

However, the record is unclear as to whether Fulks was mirandized after being placed in the police vehicle, and if so, when. The record is also unclear as to whether—after the search at Old Wire Road—Fulks was questioned about ownership regading the gun that was found. The Government has not met its burden to prove that any such statements were voluntary and/or made after proper *Miranda* warnings.

9

Therefore, any custodial statements made to police officers after the point in time when Fulks is placed in the police vehicle to be transported to Old Wire Road are suppressed and will not be allowed at the trial.[1]

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Motion to Suppress be **DENIED** as to any statements made to Detective Johnson or Agent Rorex prior to being placed in a police vehicle and taken to 2437 Old Wire Road, and **GRANTED** as to any statements made from the time Fulks was placed in the police vehicle and taken to his residence on Old Wire Road.

As to Fulks' request to file a motion regarding consent to search his residence, **IT IS FURTHER ORDERED** that such motion be filed no later than January 27, 2015 and any response by the Government be filed 7 days thereafter.

**IT IS SO ORDERED** this __16th__ day of January, 2015.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[1] This Order does not apply to the recorded jail conversation between Fulks and the unidentified female.